IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| JOSIE ANN McQUISTON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 5:16-cv-1105-TMP |
| ) | |
| NANCY A. BERRYHILL, ) | |
| Acting Commissioner of Social ) | |
| Security, ) | |
| ) | |
| Defendant. ) | |
| ) | |

## **MEMORANDUM OPINION**

**I. Introduction**

The plaintiff, Josie Ann McQuiston, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner")[1] denying her application for disability insurance benefits ("DIB") and supplemental security income ("SSI"). She alleged disability with an onset date of September 1, 2009, but later requested a closed period of disability from May 17, 2011, until August 5,

---

[1] The defendant has asserted, and the court takes judicial notice, that the Acting Commissioner for the United States Social Security Administration is, as of the date of this order, Nancy A. Berryhill.

2014.  Ms. McQuiston timely pursued and exhausted her administrative remedies, and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).  The parties have consented to the full dispositive jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 626(c).

Ms. McQuiston was 39 years old at the time of the Administrative Law Judge's ("ALJ") decision, and she has an eighth-grade education, which included special education classes for math and reading.  (Tr. at 39-40).  Her past work experience was as a cleaner and as an employee in a fast-food restaurant.  (Tr. at 20).  Ms. McQuiston claims that she was disabled from May 17, 2011, until August 5, 2014, because of recurrent staphylococcus ("staph") infections.  (Tr. at 33).[2]  The medical evidence submitted to the ALJ indicates that Ms. McQuiston received treatment for her staph infections, which plaintiff describes as "Rare Staphylococcus Aureus that is oxacillin resistant."  (Doc. 13, pp. 1-2).

---

[2] Plaintiff had alleged disability based on anxiety, pelvic inflammatory disease, headaches, and chronic staph infections, but only the issue of the closed period that coincides with her recurrent staph infections has been raised in this appeal.  Accordingly, the ALJ's finding that the plaintiff had "severe," but not disabling, anxiety is not at issue, and any arguments as to any other disabling condition have been waived.

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The first step requires a determination of whether the claimant is "doing substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If he or she is, the claimant is not disabled and the evaluation stops. *Id*. If she is not, the Commissioner next considers the effect of all of the claimant's physical and mental impairments combined. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). These impairments must be severe and must meet the durational requirements before a claimant will be found to be disabled. *Id*. The decision depends upon the medical evidence in the record. *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971). If the claimant's impairments are not severe, the analysis stops. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Otherwise, the analysis continues to step three, which is a determination of whether the claimant's impairments meet or equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the claimant's impairments fall within this category, she will be found disabled without further consideration. *Id.* If they do not, a determination of the claimant's residual

functional capacity ("RFC") will be made, and the analysis proceeds to the fourth step. 20 C.F.R. §§ 404.1520(e), 416.920(e). Residual functional capacity is an assessment, based on all relevant evidence, of a claimant's remaining ability to do work despite her impairments. 20 C.F.R. § 404.1545(a).

The fourth step requires a determination of whether the claimant's impairments prevent her from returning to past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant can still do her past relevant work, the claimant is not disabled and the evaluation stops. *Id.* If the claimant cannot do past relevant work, then the analysis proceeds to the fifth step. *Id.* Step five requires the court to consider the claimant's RFC, as well as the claimant's age, education, and past work experience, in order to determine if he or she can do other work. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can do other work, the claimant is not disabled. *Id.* The burden of demonstrating that other jobs exist which the claimant can perform is on the Commissioner; and, once that burden is met, the claimant must prove her inability to perform those jobs in order to be found to be disabled. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999).

Applying the sequential evaluation process, the ALJ found that Ms. McQuiston has not been under a disability within the meaning of the Social Security Act from the date of onset through the date of her decision. (Tr. at 22-23). She first determined that Ms. McQuiston met the insured status requirements of the Social Security Act through March 31, 2014. (Tr. at 14). She next found that she has not engaged in substantial gainful activity since September 1, 2009, the alleged onset date. *Id.* According to the ALJ, the plaintiff's recurring staph infection and anxiety are considered "severe" based on the requirements set forth in the regulations. (Tr. at 15). However, she found that these impairments neither meet nor medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* The ALJ determined that Ms. McQuiston's statements concerning the intensity, persistence, and limiting effects of her symptoms were "not entirely credible" (Tr. at 20), and she determined that the plaintiff has the ability to perform a range of light, unskilled work, but that she should not work in the food industry or the medical field because of the possibility of transmitting the infection, and because of the risk of causing her drug dependence to recur. (Tr. at 19).

Moving on to the fourth step of the analysis, the ALJ concluded that Ms. McQuiston is unable to perform her past relevant work as a fast food worker (Tr.

at 20). The ALJ considered the testimony of a vocational expert ("VE"), and determined that, considering the claimant's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that the claimant can perform, including work as a garment sorter, a ticket marker, and a product assembler. (Tr. at 21). The ALJ concluded her findings by stating that Plaintiff is not disabled under Section 1520(f) of the Social Security Act. (Tr. at 22).

## II. Standard of Review

This court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). Substantial evidence is "more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Commissioner of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004), quoting *Lewis v. Callahan*, 125 F.3d 1436, 1439-40 (11th Cir. 1997). The court approaches the factual findings of the Commissioner with

deference, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). The court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Id.* "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if this Court finds that the evidence preponderates against the Commissioner's decision, the Court must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400. No decision is automatic, however, for "despite this deferential standard [for review of claims] it is imperative that the Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

**III. Discussion**

Ms. McQuiston alleges that the ALJ's decision should be reversed and remanded because the ALJ improperly failed to credit the plaintiff's testimony regarding her pain during active staph infections, and failed to consider her request for a closed period of disability.[3] (Doc. 13). The Commissioner has responded that the ALJ's decision is based on substantial evidence and is due to be affirmed.

A brief discussion of the plaintiff's medical history is necessary in order to put the ALJ's decision into context. Ms. McQuiston asserts that she contracted the staph infection during her first incarceration in 2007.[4] After her release from prison in 2009, she first sought treatment for the staph infection at the emergency room of Huntsville Hospital on February 8, 2011, complaining of a burning arm pain that had begun four days earlier. She was noted to have a "small abscess size of dime under right armpit" [sic] with no fever. (Tr. at 583). The abscess was

---

[3] The argument that the ALJ failed to consider the closed period of disability is both without merit because the ALJ specifically acknowledged the claimant's request for a period of closed disability (Tr. at 12), and without any basis in law because the ALJ determined that the claimant was not disabled at any time from her alleged onset date until her administrative hearing. *See, e.g., Jones v. Commissioner of Soc. Sec.*, 181 Fed. App'x 767, 773 (11th Cir. 2006).

[4] Ms. McQuiston testified at her second hearing that she initially contracted the staph infection when she was in Tutwiler prison in 2007, but she also testified that she contracted the infection in Madison or Clay County jails in 2006. (Tr. at 46, 78). However, there have been no jail or prison medical records produced that show any such infection treated or complained of during her incarceration. The first time the infection is noted in the medical records that have been made part of the record was four years later, in February 2011.

incised and drained, and covered with a band-aid. She was then discharged with antibiotics and pain medication, and she was warned to watch for signs of infection. (Tr. at 584).

Her next treatment for a staph infection was May 14, 2011, which coincides with her onset date for the closed period of disability at issue here. Ms. McQuiston went to Huntsville Hospital ER and was assessed with a minor abscess on her abdomen that had been present for two days. She reported that her pain was at a level of 10 on a scale of 1 to 10. The doctor preformed an incision and drainage, and Ms. McQuiston was discharged with pain medication. (Tr. at 477-84). She returned on May 17, 2011, complaining that the pain had worsened, and the abscess was again incised and drained and she was given a prescription for additional pain medication. (Tr. at 463-70).

Ms. McQuiston received treatment at the Huntsville Hospital ER for another minor abscess on July 22, 2011, which she reported had lasted three days. This abscess was on her arm. An incision and drainage was performed. (Tr. at 451-57). Another minor abscess in the right axilla (armpit) was similarly treated on September 23, 2011. (Tr. at 423-30). She returned to the ER on December 9, 2011, for an abscess on her left forearm, which also was treated with incision and

drainage. (Tr. at 476-85). On December 26, 2011, she returned for treatment of an abscess on her lower eyelids. She was discharged with pain medication and an antibiotic eye ointment. (Tr. at 452-58).

Ms. McQuiston's next visit to the hospital for treatment of a staph infection was on October 1, 2012, over nine months later, when she had an abscess under her left eye. She was given antibiotics and pain medication, and the abscess was incised and drained. (Tr. at 759-67). She returned the next day, reporting that the abscess had worsened, and she was treated with intravenous injections of antibiotics. (Tr. at 714-46). On November 2, 2012, she was treated for a cough, and for two small abscesses which were deemed "not ready" for incision and drainage. (Tr. at 784-90).

Ms. McQuiston next went to the emergency room on December 8, 2013, for an abscess, but she left the hospital before being treated by a physician. (Tr. at 873-76). She returned on December 12, 2013, complaining of an abscess on her right arm, and was treated with an incision and drainage. (Tr. at 898).

The next time Ms. McQuiston sought treatment for her staph infection was on July 10, 2014, seven months later, where it was observed that she was in "obvious mild-moderate discomfort" from abscess to her left cheek and right

eyebrow. (Tr. at 961). She was treated with incision and drainage. (Tr. at 966). She returned four days later, with complaints regarding the abscesses on her face, and was also treated for an abscess on her left leg. (Tr. at 914). She was triaged at 3:54 p.m., and a urine specimen was collected. She still had not been treated at about 6:30 p.m., when she became "agitated" and "rude"; she was escorted out of the hospital by security staff at no later than 7:35 p.m. without further evaluation. (Tr. at 917).

She was admitted to Crestwood Medical Center on July 15, 2014, for treatment of cellulitis around both eyes. (Tr. at 994). She was found to have symptoms that were "moderate" "at their worst," and in "no acute distress." (*Id.*) She reported her pain level was at a level of 10 on a scale of 1 to 10. (Tr. at 997). An incision and drainage was performed on July 16, 2014, and the doctor reported that the cellulitis was "almost completely resolved." She was given intravenous antibiotics and was advised to cut her nails, being told that the nails were "the most likely factor" for transmission of the staph infection. (Tr. at 999). She was discharged on July 19, 2014. (*Id.*) About two weeks later she visited the Central North Alabama Health Services clinic, complaining of "staph." (Tr. at 1117). It

appears that she received additional antibiotics, although the medical records are difficult to decipher.

Subjective testimony of pain and other symptoms may establish the presence of a disabling impairment if it is supported by medical evidence. *See Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995). To establish disability based upon pain and other subjective symptoms, "[t]he pain standard requires (1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)); *see also Landry v. Heckler*, 782 F.2d 1551, 1553 (11th Cir. 1986).

The ALJ is permitted to discredit the claimant's subjective testimony of pain and other symptoms if she articulates explicit and adequate reasons for doing so. *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002); *see also* Soc. Sec. Rul. 96-7p, 1996 WL 374186 (1996) ("[T]he adjudicator must carefully consider the individual's statements about symptoms with the rest of the relevant evidence in the case record in reaching a conclusion about the credibility of the individual's

statements."). Although the Eleventh Circuit does not require explicit findings as to credibility, "'the implication must be obvious to the reviewing court.'" *Dyer*, 395 F.3d at 1210 (quoting *Foote*, 67 F.3d at 1562). "[P]articular phrases or formulations" do not have to be cited in an ALJ's credibility determination, but it cannot be a "broad rejection" which is "not enough to enable [the district court or this Court] to conclude that [the ALJ] considered her medical condition as a whole." *Id.* (internal quotations omitted).

In this case, the ALJ specifically stated that plaintiff's staph infection was a severe impairment. The ALJ further explicitly acknowledged that plaintiff was seeking a closed period of disability. However, a careful review of the medical records relating to that closed period indicates that the ALJ's decision is based on substantial evidence.

The plaintiff alleges the onset date of the closed period as May 17, 2011. After that date, she has no medical records relating to the impairment of the staph infection until July 22, 2011, when she complained that the abscess had occurred for three days. She was treated and did not seek any further treatment until another outbreak 60 days later, in late September of 2011, when she complained that the outbreak had been bothering her for two days. She was treated more than two

months later, on December 9, 2011, and again on December 26, 2011. On virtually every visit to the emergency room, Ms. McQuiston was noted to be in "no acute distress" and mild discomfort or "no obvious discomfort." (See, *e.g*., Tr. at 425). The medical records uniformly describe these abscesses as "minor," usually an inch or smaller in size. While she sometimes rated her own pain as incredibly intense—a 10 of 10—there were never any objective findings that supported her report. It is further worthy of note that although the ER physicians frequently recommended that Ms. McQuiston follow up at the free clinic, there are no records indicating that she did so, which supports the ALJ's finding that her assertions regarding the pain and disabling effects of the infection were not entirely credible.

After the December 2011 treatment, Ms. McQuiston apparently was symptom-free for more than nine months. She first sought treatment in 2012 in October. She then sought treatment only one other time in 2012, in November, and the records indicate that the abscess was not so severe as to require an incision and drainage. At the November 2012 visit the plaintiff was complaining of a cough, apparently unrelated to the staph infection. Ms. McQuiston apparently remained free of any outbreaks of the staph infection for the next 13 months. She was

treated only once in 2013, in December, and then went for about seven months before her next outbreak in July 2014.[5]

None of the medical records reflect that any discomfort caused by the staph infection would render Ms. McQuiston unable to work. None of the medical records reflect any notation that the plaintiff should not work or should be isolated from other people. To support her argument that she could not work because she needed to be isolated due to the contagious nature of a staph infection, the plaintiff relies primarily on reference to and a quotation from *The Merck Manual of Diagnosis and Therapy* (17th ed. 1999), which reports that "infected patients should be isolated from other susceptible patients and hospital personnel." As the Commissioner points out in her response, the medical text cited refers to the standard of care for patients in a medical facility. There is no evidence in the record that indicates that Ms. McQuiston was ever told, or that any doctor did or should have recommended, that she be "isolated" and kept from the workplace or from other people. Even if the plaintiff required some sort of isolation during her

---

[5] The ALJ did not explicitly find, and the Commissioner does not make the argument, that the staph infection does not meet the durational requirement that the impairment "has lasted or can be expected to last for a continuous period of not less than twelve months," but it appears that the duration of the disabling aspect of the infection never lasted more than, at the most, about seven months during 2011. 42 U.S.C. §§ 416(i), 423(d)(1)(A).

hospitalizations or outbreaks, the brief and episodic nature of those incidents does not support a finding that the plaintiff was disabled, even for the closed period of disability. During that approximate four-year period, it is undisputed that Ms. McQuiston suffered no outbreak at all for one seven-month period, and for another period of 13 months.

Having considered the ALJ's opinion and all of the evidence presented, the court finds that the ALJ's decision is supported by on substantial evidence and employed the proper legal standard. Accordingly, the decision is due to be affirmed.

## IV. Conclusion

Upon review of the administrative record, and considering all of Ms. McQuiston's arguments, the undersigned Magistrate Judge finds that the Commissioner's decision is supported by substantial evidence; therefore, the decision is AFFIRMED. A separate Order will be entered.

DATED the 25th day of September, 2017.

_____
T. MICHAEL PUTNAM
UNITED STATES MAGISTRATE JUDGE